UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON WALLACE,

        Plaintiff,

-vs-

MARK FROHLICH and
VILLAGE OF PINCKNEY,

        Defendants.
_____/

CASE NO. 06-CV-10897

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants Mark Frohlich and Village of Pinckney's May 30, 2007 Motion for Summary Judgment. (Doc. No. 18). Plaintiff Aaron Wallace ("Plaintiff") filed a Response on June 20, 2007. The Court held a motion hearing on August 10, 2007. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendants' Motion for Summary Judgment.

**I.    BACKGROUND**

This case arises out of Plaintiff's allegations that he suffered Fourth Amendment constitutional violations as a result of Village of Pinckney Police Officer Frohlich's unreasonable seizure of Plaintiff.

At the time of the filing of the Second Amended Complaint on October 31, 2006, Plaintiff was a resident of Livingston County, Michigan. (2d Am. Compl. ¶ 1). At the time of the incident, Officer Frohlich was employed by the Village of Pinckney Police Department and was acting under

1

the color of law and in the scope and course of his duties. (2d Am. Compl. ¶ 2). The Village of Pinckney is a municipal corporation and is located within Livingston County. (2d Am. Compl ¶ 3).

On the night of Friday, October 28, 2004, Kelly Bowlin met Plaintiff at his parents' house to go on a date to a "haunted forest barn" attraction in Pinckney. (Def. Br. Ex. E, Bowlin Dep. 7:10-15; Def. Br. Ex. D, Wallace Dep. 27:7-11).

Plaintiff testified that prior to leaving for the haunted barn, he had consumed two 12-ounce beers, although he could not remember if he had consumed them at his house or at Bowlin's house. (Wallace Dep. 27:24-25, 28:1-5). Plaintiff and Bowlin then drove from South Lyon to Pinckney in Plaintiff's car. (*Id*. at 9:24-25, 10:1-2). Plaintiff estimated that they left for Pinckney around 10:00 p.m. (Wallace Dep. 27:12-14).

When Plaintiff and Bowlin arrived at the haunted barn, they paused in the parking lot to have a beer from Plaintiff's car. (Bowlin Dep. 11:6-15). After spending maybe an hour at the attraction, Plaintiff and Bowlin returned to Plaintiff's car. (*Id*. at 13:19-21; Wallace Dep. 29:17-18). Bowlin stated that she had a beer after the haunted barn but was not sure if Plaintiff had any beer, and if so, how many. (Bowlin Dep. 13:25, 14:1-9).

Plaintiff and Bowlin then proceeded to drive home to South Lyon back through Pinckney. (Wallace Dep. 30:5-9). At about 11:45 p.m., Officer Frohlich, sitting in a patrol car on the side of the road, clocked Plaintiff traveling 43 mph in a 25 mph zone. (Def. Br. Ex. 1, Frohlich Dep. 20:1-11; Def. Br. Ex. C, Police Report). Frohlich pulled out his patrol car and began to follow Plaintiff for about one hundred and fifty yards to find a "reasonable place to do a safe traffic stop." (Frohlich Dep. at 24:12-25, 25:1-2). Having observed the police car behind him, Plaintiff then pulled into a

gas station parking lot. (*Id*. at 25:11-15; Bowlin Dep. 16:23-25, 17:1-2; Wallace Dep. 31:16-25, 32:1-10).

Frohlich approached the vehicle and asked for Plaintiff's driver's license. (Frohlich Dep. 26:1-7). Frohlich testified that he smelled alcohol coming from the car and observed Plaintiff's "slow finger movement" as Plaintiff searched his wallet for the license. (*Id*. at 25:8-15, 28:3-8). Bowlin additionally indicated that Plaintiff told her that Plaintiff thought the officer was suspicious, since the officer had noticed that Plaintiff's eyes were bloodshot – yet Bowlin could not remember herself if she had noticed that Plaintiff's eyes were bloodshot. (Bowlin Dep. 21:5-25, 22:1-3).

Frohlich then asked Plaintiff if he had any alcohol that night. (*Id*. at 25:20-21). According to Frohlich, Plaintiff responded that he had consumed three beers, with the last beer consumed two hours previously. (*Id*. at 26:20-25, 27:1-2). Plaintiff stated that he told Frohlich that he "might have said that [he] had one" beer. (Wallace Dep. 33:17-18). Plaintiff further testified:

> Q: Let me rephrase the question. Was your statement that you had one an accurate statement?
>
> A: I believe so, because if I did a BAC it would come up as one beer, because it had been an hour.
>
> Q: But I thought you told me you had two?
>
> A: I did.
>
> Q: All right. So you were already calculating the alcohol dissipation rate –
>
> A: Yes.
>
> . . . .
>
> Q: Which is you testified here that you'd had two beers prior, and then you told me that you told the officer you had one, and my question to you was that was not an accurate statement, correct?

3

A: In my sight it was accurate, because that's what he would have found.

(*Id*. at 33:21-25, 34:1-4, 34:17-22).

Frohlich further observed that the Plaintiff was speaking slowly, and "[t]hat's usually an indicator that someone is under the influence of alcohol." (Frohlich Dep. at 26:5-11).[1]

Frohlich then asked Plaintiff to step out of the vehicle. (Wallace Dep. 36:6-8). At this point, Plaintiff stated that he volunteered to take a blood test for alcohol at the Pinckney Police Station, and that Frohlich did not respond to this proposal. (*Id*. at 36:17-25, 37:1-12).

Frohlich requested that Plaintiff complete several sobriety tests, and Plaintiff voluntarily agreed. (Frohlich Dep. at 29:1-8). Frohlich asked Plaintiff to perform three tests: (1) to pick a number between 21 and 19; (2) finger dexterity; and (3) a walk-and-turn. (*Id*. at 29:11-13). Frohlich observed that Plaintiff "had balancing difficulties and almost fell over several times." (*Id*. at 30:9-12). He also indicated that Plaintiff failed the "finger dexterity" sobriety test.

Plaintiff disputes that he failed the "walk-and-turn" test. (Wallace Dep. 38:21-24). Plaintiff does not dispute that he failed the finger dexterity test.

Frohlich then asked Plaintiff if he would take a preliminary breath test ("PBT"). (Frohlich Dep. at 30:22-25, 35:8-13). Frohlich admitted that he did not know when the breathalyzer had been last calibrated. (*Id*. at 32:19-25). Plaintiff's PBT result was .037, below Michigan's operating under the influence of liquor law ("OUIL") limit of .080. (*Id*. at 35:14-19).

Frohlich stated that at that point he had the impression that Plaintiff was an impaired driver and "felt that it was unsafe for him to continue driving." (*Id*. at 39:20-23). Bowlin further testified

---

[1] Plaintiff testified that he has a speech impediment, and Frohlich never inquired into that fact. (Wallace Dep. 55:5-9).

4

that Plaintiff informed her that Plaintiff thought that Frohlich believed that Plaintiff was impaired. (Bowlin Dep. 25:18-25).

Frohlich then told Plaintiff several times to call for an alternative ride home. (Bowlin Dep. 25:18-25, 27:8-13). Bowlin also asked Plaintiff to just call for a ride home. (*Id*. at 27:14-15). Plaintiff testified:

> A: He just said, "Call for a ride." I said, "That's not right, Officer."
>
> Q: Why isn't it right?
>
> A: Because I didn't do anything. I was not intoxicated on one substance.
>
> . . . .
>
> Q: You decided that you didn't want to have somebody come and pick you up and give you a ride home; is that –
>
> A: That is correct.
>
> Q: You didn't think the officer was doing you a favor, did you?
>
> A: No.
>
> Q: What was your response, then, when the officer said," No, I want you to get a ride"?
>
> A: I said, "Officer, I just can't do that. It's not right." And he says, "Have it your way," and he called Hamburg Township. They came zooming in with full-blown sirens, and they says, "Get against the back of your car" and they arrested me.

(Wallace Dep. 40:15-19, 41:9-22).

After making the request that Plaintiff call for an alternative ride home, Frohlich testified that Plaintiff started to become "verbally aggressive." (Frohlich Dep. at 43:3-6). Frohlich stated that Plaintiff "started yelling obscenities . . . . , going on about that he wanted to go to jail, he wanted me to take blood, and that he would not call somebody to come pick him up." (*Id*. at 43:7-11). Frohlich

5

stated that he gave Plaintiff several chances to "stop yelling;" and if Plaintiff persisted, that Frohlich would arrest him for being "disorderly." (*Id*. at 44:7-24; Wallace Dep. 42:16-19). Wallace denied that he ever yelled at Frohlich, or vice-versa. (Wallace Dep. 42:1-4).

According to Frohlich, when Plaintiff continued to yell, Frohlich waited for the Hamburg Township Police to arrive, and then arrested Plaintiff. (Frohlich Dep. at 45:5-8).

Frohlich stated that he then informed Plaintiff to put his hands on the rear of the squad car. (*Id*. at 45:9-12). Plaintiff complied with that request. Frohlich testified that after placing the handcuffs on Plaintiff's right hand, Plaintiff refused to move his left hand to be likewise cuffed. (*Id*. at 46:4-9, 47:22-25, 48:1). Frohlich then told Plaintiff several times to stop clinching his hands together so that Plaintiff could be cuffed. (*Id*. at 48:2-4). Plaintiff disputes that he resisted the cuffing procedure, yet could not remember if he had his hands "clasped together" in front of him. (Wallace Dep. 43:13-15, 43:21-25). Frohlich testified that Plaintiff neither complied with the cuffing nor allowed Frohlich to cuff his other hand. (Frohlich Dep. 48:12-14). Frohlich placed the cuffs on Plaintiff and put Plaintiff in the patrol car. (*Id*. at 50:16-20). Bowlin, sitting in the passenger seat of the car, stated that she could see the cuffing through the rearview mirror of the car. She indicated that she heard Frohlich telling Plaintiff to "stop resisting," but she "could plainly see that [Plaintiff's] hands were behind his back." (Bowlin Dep. 28:18-20).

At some point, Frohlich asked Bowlin if she had also been drinking and whether she could give Plaintiff a ride home. Bowlin indicated that she had also been drinking. (Frohlich Dep. 41:21-25, 42:1-4; Bowlin Dep. 34:3-10). Frohlich did not test Bowlin for alcohol since "the officers from the Hamburg Police Department were basically dealing with [Bowlin] when he was dealing with [Plaintiff]." (Frohlich Dep. 42:8-13).

6

Frohlich and Officer Neff of the Hamburg Township Police Department then performed a search of Plaintiff's car. (*Id*. at 50:21-23). Inside the car, the officers found a twelve-pack of beer with three unopened 12-ounce cans under the front passenger seat. (Def. Br. Ex. C). Neff found an empty 12-ounce beer can, and a half-consumed 12-ounce can. (*Id*.). Bowlin confirmed that some of the empties were from the beer they had drank earlier that evening, and some of the empties still had beer in them. (Bowlin Dep. 33:15-18, 34:25, 36:1). Plaintiff admitted at his deposition that there were open intoxicants in the vehicle. (Wallace Dep. 35:3-4).

Frohlich inventoried the items in the car, waited for a tow truck to arrive, and then transported Plaintiff to the Livingston County Jail. (Frohlich Dep. 51:4-15). Frohlich indicated at his deposition that he did not speak with Plaintiff on the ride to the jail. In his police report, Frohlich recorded that during the ride Plaintiff made several insulting remarks to him. (Def. Br. Ex. C).[2]

Bowlin went into the gas station and made a phone call for someone to pick her up. (*Id*. at 49:7-10).

Plaintiff posted bond at the county jail the next day, and was released. (*Id*. at 48)

On October 29, 2004, Frohlich completed an incident report that indicated that Plaintiff had been arrested for: (1) resisting and obstructing; (2) disorderly conduct; (3) impaired driving; and (4) possession of open alcohol in a moving vehicle. Frohlich issued three misdemeanor tickets to

---

[2] Frohlich's police report indicated that on the way to the county jail, Plaintiff made several statements to him, including asking whether he was ever "picked on in high school," he "felt like a big man," and that Plaintiff "makes more money than a police officer." (Def. Br. Ex. C). Plaintiff testified that it was possible that he made these statements to the officer. (Wallace Dep. 46:21-25, 47:1-8).

Plaintiff also stated that Frohlich said that Plaintiff "should be happy that he is not black" – to which Plaintiff responded, "What the F does that mean?" (Wallace Dep. 46:17-20).

Plaintiff: (1) transporting open intoxicants in a motor vehicle; (2) impaired driving; and (3) speeding. Frohlich also issued a misdemeanor ticket to Bowlin for transporting intoxicants.

On February 1, 2005, a preliminary examination on the charge of resisting and obstructing was held before Judge A. John Pikkarainen of the 53rd District Court in Howell, Michigan. (Def. Br. Ex. B, Preliminary Examination Transcript). Plaintiff was represented by counsel; Frohlich was the only witness to testify.

Upon completion of the hearing, Judge Pikkarainen ruled:

> Well, [ ] when I first took the bench, it seemed like in certain jurisdictions, there seemed to be an [resisting and obstructing] develop out of nearly every traffic stop and then they disappeared for a number of years and now they're reappearing on very, very marginal circumstances, and [ ] frankly, as a I sat through the exam, some veteran officer that had been around the Court for a long time suggested to me that in every arrest there's some slight resistance. Does it elevate itself to [a resisting and obstructing]? Probably not. This case falls in that category. Case is dismissed.

(*Id*. at 22-23).

On May 9, 2005, Livingston County Assistant Prosecuting Attorney Angela Del Vero filed a Motion for Nolle Prosequi in the 53rd District Court on the charges of resisting and obstruction, and open alcohol container in vehicle. (Def. Br. Ex. C, Motion/Order of Nolle Prosequi). The charges were dismissed without prejudice.

On October 31, 2006, Plaintiff filed his Second Amended Complaint against Defendants Frohlich and Village of Pinckney, asserting the following claims:

    Count I:     42 U.S.C. § 1983 Unreasonable Seizure
    Count II:    False Arrest & False Imprisonment (state law)
    Count III:   Malicious Prosecution (state law)
    Count IV:    42 U.S.C. § 1983 Malicious Prosecution
    Count V:     42 U.S.C. § 1983 Municipal Liability against Village of Pinckney

Defendants moved for summary judgment on May 30, 2007. Defendants argue that Frohlich had probable cause to arrest and to prosecute Plaintiff.

## II. ANALYSIS

### A. Standard of Review on Summary Judgment

Under Fed. R. Civ. P. 56(b), a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*. In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment.

*Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact." *Id.* (citations omitted); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990).

      **B.**      **Section 1983 Unreasonable Seizure Claim against Frohlich**

Defendants contend that Plaintiff has not suffered a constitutional violation, since Plaintiff's arrest for impaired driving, open intoxicants, disorderly person and resisting arrest was valid and based upon probable cause.

The United States Court of Appeals for the Sixth Circuit has recently summarized the qualified immunity analysis as it applies to § 1983 claims:

> To state a claim under 42 U.S.C. § 1983, a plaintiff must present facts sufficient to show that the defendants, acting under color of state law, deprived him of a specific right or interest secured by the Constitution or laws of the United States.
>
> . . . .
>
> Section 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced. Our first task, therefore, is to identify the specific constitutional or statutory rights allegedly infringed.
>
> . . . .
>
> Qualified immunity protects officials from liability when a reasonable official in the defendant's position would not have understood his or her actions to violate a person's

constitutional rights. Under the doctrine of qualified immunity, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Meals v. City of Memphis*, 493 F.3d 727-29 (6th Cir. 2007) (internal citations omitted).

A court applies the following three-step analysis for evaluating a qualified immunity defense:

First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003) (internal citations omitted). "If the plaintiff fails to establish any one of these elements, qualified immunity must be granted." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 302 (6th Cir. 2005).

The Court must first determine initially whether the plaintiff has stated a claim for a constitutional violation under the Fourth Amendment. *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002).

The Fourth Amendment mandates that an arrest be supported by probable cause. *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000). To find probable cause to make an arrest, "the court must look to facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Helms v. Zubaty*, 495 F.3d 252, 258 (6th Cir. 2007) (internal quotes and citation omitted). "Assessment of probable cause should consider the totality of the circumstances. This totality of the circumstances analysis

includes a realistic assessment of the situation from a law enforcement officer's perspective." *Ross v. Duggan*, 402 F.3d 575, 585 n. 6 (6th Cir. 2004) (internal citations omitted). "Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. It does not depend on the officer's *subjective motivation* or his *stated reason* for making the arrest." *Hastings v. Hubbard*, 151 Fed. Appx. 357, 362 (6th Cir. Sept. 30, 2005) (unpublished) (emphases added) (citing *Devenpeck v. Alford,* 543 U.S. 146 (2004)). "However, the initial probable cause determination must be founded on both the inculpatory *and* exculpatory evidence known to the arresting officer, and the officer cannot simply turn a blind eye toward potentially exculpatory evidence." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (internal citations and quotation marks omitted) (emphasis in original)."Whether an officer is authorized to make an arrest ordinary depends, in the first instance on state law." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

Defendants contend that Frohlich had probable cause to arrest Plaintiff for three misdemeanors (impaired driving, open intoxicants, and disorderly conduct), as well as one felony (resisting and obstructing a police officer). Under Michigan law, a police officer can "arrest a person [if a] felony, misdemeanor, or ordinance violation is committed" in the officer's presence. Mich. Comp. Laws § 764.15(1)(a).

There is no dispute that Frohlich initiated a valid traffic stop, based upon Plaintiff's driving in excess of the posted speed limit. The odor of alcohol emanating from Plaintiff's vehicle provided sufficient reasonable suspicion to investigate Plaintiff further. *See United States v. Verdell*, 93 Fed. Appx. 57, 60 (6th Cir. Mar. 11, 2004) (unpublished) (holding that upon detecting the odor of

12

alcohol coming from an individual's car, "the officer was entitled to determine whether [the defendant] was under the influence of alcohol before driving away").

Per Defendants, upon further investigation, including sobriety tests and a PBT, Frohlich developed probable cause to arrest Plaintiff for impaired driving. When Plaintiff refused Frohlich's request to cooperate in handcuffing, Plaintiff resisted a police officer's lawful command, in violation of Michigan's resisting and obstructing statute; and Frohlich had probable cause to arrest Plaintiff for resisting and obstructing.

The Court finds that Frohlich had probable cause to arrest Plaintiff for "impaired driving." Michigan law distinguishes between the separate offenses of "driving under the influence of alcohol" and "driving while impaired."

> Michigan's operating under the influence of alcohol statute provides:
>
> A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated. As used in this section, "operating while intoxicated" means either of the following applies:
>
> > (a) The person is under the influence of alcoholic liquor, a controlled substance, or a combination of alcoholic liquor and a controlled substance.;
> >
> > (b) The person has an alcohol content of 0.08 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine, or, beginning October 1, 2013, the person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine.

Mich. Comp. Laws § 257.625(1).

> On the other hand, Michigan's impaired driving law provides:
>
> A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an

area designated for the parking of vehicles, within this state when, due to the consumption of alcoholic liquor, a controlled substance, or a combination of alcoholic liquor and a controlled substance, the person's ability to operate the vehicle is visibly impaired. If a person is charged with violating subsection (1), a finding of guilty under this subsection may be rendered.

Mich. Comp. Laws § 257.625(3).

Michigan courts have interpreted the term "visibly impaired" to include the following:

According to our Supreme Court, visible impairment is shown when the "defendant's ability to drive was so weakened or reduced by consumption of intoxicating liquor that defendant drove with less ability than would an ordinary, careful and prudent driver. Such weakening or reduction of ability to drive must be visible to an ordinary, observant person."

The degree of a person's intoxication may be established by chemical analysis tests of the person's blood, breath, or urine or by testimony of someone who observed the impaired driving.

*People v. Calvin*, 216 Mich. App. 403, 407-08 (1996) (internal citations omitted); *People v. Lambert*, 395 Mich. 296, 305 (1975). Michigan courts have recognized that "the threshold for OWI is much lower [than OUIL]." *Oxendine v. Sec'y of State*, 237 Mich. App. 346, 354 (1999).

The Court finds that there is no genuine issue of material fact whether Frohlich had probable cause to arrest Plaintiff for the impaired driving offense. First, the fact that Plaintiff's breathalyzer results were below the OUIL limit does not preclude a finding of probable cause for the offense of impaired driving. Second, even if Plaintiff disputes the results of the "walk-and-turn" test, Frohlich was confronted with a variety of undisputed evidence that support probable cause for the impaired driving offense.

The Court finds that Frohlich had probable cause to arrest Plaintiff for driving while impaired due to: (1) his speeding; (2) the smell of alcohol emanating from the car; (3) Plaintiff's admission that he had been drinking alcohol; (4) Plaintiff's slow speech; (5) Plaintiff's slow finger

movements; (6) Plaintiff's bloodshot eyes; (7) Plaintiff's failure to pass two of the three sobriety tests; and (8) the .037 score on the PBT.

At that point, Frohlich, after lawfully arresting Plaintiff, could search the vehicle. That results of that search yielded open containers of alcohol, thereby supporting Plaintiff's arrest for driving with open containers aboard.[3]

An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 594; *Whren v. United States*, 517 U.S. 806, 812-13 (1996). "The fact that the officer does not have the state of mind which is hypothecated by the reasons which provide legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Whren*, 517 U.S. at 813 (quotation omitted). Since probable cause existed to arrest Plaintiff for impaired driving, Frohlich's stated reason for arresting Plaintiff is not a basis for invalidating the arrest.

---

[3]     Michigan law specifies that transporting alcoholic liquor in opened containers in a motor vehicle is a misdemeanor offense. Mich. Comp. Laws § 257.624a(1), (3)

Since Frohlich had probable cause to arrest Plaintiff for impaired driving, he could then search Plaintiff's car under the "automobile exception" to the warrant requirement.

The Supreme Court has held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460 (1981) (footnotes omitted); *see United States v. Hudgins*, 52 F.3d 115, 118-19 (6th Cir. 1995).

Under *Belton*, once Frohlich had developed probable cause to arrest Plaintiff for impaired driving, Frohlich could lawfully search the passenger compartment of Plaintiff's vehicle. Frohlich then found at least one half-consumed twelve-ounce beer in Plaintiff's passenger compartment, providing the basis for the offense of transporting opened alcoholic containers in a motor vehicle.

15

Therefore, since Plaintiff has not established a constitutional violation, the Court GRANTS summary judgment to Defendant Frohlich on Plaintiff's § 1983 unreasonable seizure claim.

    **C.    Section 1983 Malicious Prosecution Claim against Frohlich**

As a result of the incident, the prosecuting attorney charged Plaintiff with two criminal offenses: (1) resisting & obstructing; and (2) open alcohol container in vehicle. The state district judge dismissed the resisting & obstructing charge. The prosecuting attorney subsequently filed a motion/order of nolle prosequi for both offenses.

The Sixth Circuit has recognized a § 1983 claim for malicious prosecution arising under the Fourth Amendment, but the contours of such a claim remain uncertain. *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); *see Wallace v. Kato,* 127 S. Ct. 1091, 1096 n. 2 (2007) (noting that the Supreme Court has "not explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983"). "What is certain, however, is that such a claim fails when there was probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute." *Fox*, 489 F.3d at 237 (citing *McKinley v. City of Mansfield*, 404 F.3d 418, 444-45 (6th Cir. 2005)).

In this instance, it appears that the state prosecuting attorney made the decision to prosecute Plaintiff on the listed charges. Prosecutors are absolutely immune from § 1983 suits for activities that were an "integral part of the judicial process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003). "Prosecutorial immunity extends to a prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (internal citations and quotation marks omitted). Further, the prosecutor is not a defendant in this case

First, the Court has determined above that probable cause existed for the charge of open intoxicants in a motor vehicle.

Second, for the charged offense of resisting & obstructing, Plaintiff has not produced any evidence that Frohlich presented false or fabricated evidence to the prosecuting attorney to provide a probable cause basis.

Therefore, the Court GRANTS summary judgment to Defendant Frohlich on Plaintiff's § 1983 malicious prosecution claim.

### D. Section 1983 Failure to Supervise / Failure to Train Claims against Village of Pinckney

Plaintiff contends that the following supports a § 1983 municipal liability claim: (1) the fact that Frohlich has received verbal counseling at the Pinckney Police Department, and received a suspension for an accidental discharge of a firearm while at another police department; (2) the fact that Frohlich admitted that he had no training regarding "proper" field sobriety tests; and (3) that out of twenty employees of the Pinckney Police Department, only two had any training on PBTs.

The Sixth Circuit has recognized that "[t]here can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act." *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Since the Court has found that Defendant Frohlich did not commit any underlying unconstitutional act, Plaintiff's municipal liability claim must also necessarily fail.

Therefore, the Court GRANTS summary judgment to Defendant Village of Pinckney of Plaintiff's § 1983 municipal liability claim.

### E. State Law Claims of False Arrest, False Imprisonment, and Malicious Prosecution

Plaintiff asserts the state law tort claims of false arrest, false imprisonment, and malicious prosecution. While the Court possesses the discretion to exercise jurisdiction over Plaintiffs' state law claims, it will decline to exercise that jurisdiction pursuant to 28 U.S.C. § 1367(a) and (c). Considerations of judicial economy in this instance do not support further proceedings to resolve Plaintiff's state law clams. *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

### III. CONCLUSION

For the foregoing reasons, the Court hereby:

(1) **GRANTS** Defendants' Motion for Summary Judgment on Plaintiff's federal claims (Doc. No. 18); and

(2) **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state law claims.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  October 10, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 10, 2007.

s/Denise Goodine

Case Manager